**Anthony J. TISKO, Appellant,**

v.

**Kervin HARRISON, a minor, Appellee.**

**No. 18137.**

Court of Civil Appeals of Texas, Dallas.

Sept. 27, 1973.

Rehearing Denied Oct. 18, 1973.

Windle Turley, Dallas, for appellant.

Richard E. Green, Touchstone, Bernays & Johnston, Dallas, for appellee.

GUITTARD, Justice.

Plaintiff sues for medical expenses incurred for treatment of injuries to his minor son sustained when the son was riding as a guest in an automobile driven by defendant. The parties stipulate that defendant was not guilty of gross negligence. Our questions are whether the guest statute, Tex.Rev.Civ.Stat.Ann. art. 6701b (Vernon 1969), bars the parent's claim as well as the son's, and if so, whether it deprives automobile guests generally of equal protection of the laws. We hold that it does bar the parent's claim and that it does not deny equal protection. Accordingly, we affirm a summary judgment for defendant.

1. *Applicability of guest statute*

Article 6701b provides:

No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for inju-

ries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others.[1]

Plaintiff contends that the cause of action for his son's medical expenses is his own rather than his son's, and that it is not within the literal language of the statute because he was not himself a "person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest." Consequently, he argues, he may base his recovery on ordinary negligence although the statute would deny recovery to his son under the facts stipulated.

 This argument overlooks the requirement that a parent's recovery for consequential damages resulting from injury to a child must be based on a legal wrong to the child. No legal wrong is done to the child without breach of a duty to the child. Failure of the owner or operator to use ordinary care for the safety of a guest is not a breach of duty to the guest because the statute absolves him of that duty by limiting his liability to intentional misconduct or gross negligence. Thomas v. Southern Lumber Co., 181 S.W.2d 111 (Tex.Civ.App., Waco, 1944, no writ); Elkins v. Foster, 101 S.W.2d 294 (Tex.Civ. App., Amarillo, 1937, writ dism'd); 2 F. Harper & F. James, The Law of Torts § 16.15, at 951 (1956); Keeton, Annual Survey of Texas Law, Torts, 24 S.W.L.J. 3, at 19 (1970). Consequently, the parent of a minor guest has no cause of action for failure of the owner or operator to use ordinary care. Shiels v. Audette, 119 Conn. 75, 174 A. 323, 94 A.L.R. 1206 (1934).

### 2. Constitutionality of guest statute

 In plaintiff's constitutional attack, he argues that the statute denies equal protection of the laws because "its sole purpose and effect is to bestow an immunity on a special group by imposing an invidious discrimination against innocent injured persons," contrary to the guarantee of "equal rights" in Tex.Const. art. I, § 3 (Vernon's Ann.St. 1955) and the "equal protection" clause of the Fourteenth Amendment to the Constitution of the United States. We do not find this argument to be supported by the controlling authorities or by established principles of constitutional law.

#### a. The authorities

The constitutionality of the Texas guest statute has been upheld in three cases. Campbell v. Paschall, 132 Tex. 226, 121 S.W.2d 593 (1938); Perry v. Harrod, 451 S.W.2d 821 (Tex.Civ.App., Amarillo, 1970, writ ref'd n. r. e.); Elkins v. Foster, 101 S.W.2d 294 (Tex.Civ.App., Amarillo, 1937, writ dism'd). None of the opinions cited specifies the ground of constitutional attack,[2] but in *Campbell,* the supreme court calls attention to several decisions from other jurisdictions upholding similar statutes against attacks based on the equal protection clause, including the leading case of Silver v. Silver, 108 Conn. 371, 143 A. 240, 65 A.L.R. 943 (1928), aff'd, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929).

In *Silver* the plaintiff's principal contention was that the Connecticut guest statute, on which ours was modeled,[3] made an un-

---

1. After the present cause of action arose, the statute was amended to limit its coverage to persons "related within the second degree of consanguinity or affinity to the owner or operator." Tex.Laws 1973, ch. 28, § 3, at 42.

2. The court of civil appeals in *Campbell* discusses the contention that the statute was invalid under Tex.Const. art. XVI, § 26, which preserves to the survivors of a homicide a cause of action for exemplary damages for a willful act, or omission or gross neglect, but the supreme court does not state the arguments presented there. Paschall v. Gulf, C. & S. F. Ry., 100 S.W.2d 183 (Tex.Civ.App., Dallas, 1936), aff'd sub nom. Campbell v. Paschall, 132 Tex. 226, 121 S.W.2d 593 (1938).

3. Pfieffer v. Green, 102 S.W.2d 1077 (Tex. Civ.App., Beaumont, 1937, no writ).

reasonable distinction between a guest in an automobile and a guest in any other mode of transportation or in any other place, thus depriving him of equal protection of the law. Rejecting this contention, the Supreme Court of Errors of Connecticut recognized the automobile as a proper basis for the legislative classification in that it had. a fair and substantial relation to the legislative object of control and regulation of traffic on public highways. The court held that the legislature acted well within the limits of the police power in making a distinction between the degree of care to be exercised by the owner or operator of a motor vehicle toward a guest and that to be exercised toward one who pays for transportation. That distinction, said the court, ran through many fields of law, for example, in the differing duties of a gratuitous bailee and a bailee for hire. The court saw inherent justice in the rule that one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. Two dissenters insisted that the classification as between gratuitous guests in automobiles and gratuitous guests in every other possible situation and mode of transportation was unreasonable, arbitrary and served no public purpose. On appeal to the Supreme Court of the United States, the judgment was affirmed in an opinion which we shall discuss later. Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929).

Similar statutes have been enacted in more than half of the states,[4] and, on authority of *Silver*, they have generally been upheld against attacks based on the equal protection clause.[5]

The only decision holding a statute similar to ours to be unconstitutional, so far as we have found, is Brown v. Merlo, 8 Cal. 3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973), upon which plaintiff here principally relies. In that case the Supreme Court of California in a carefully considered opinion holds that the California guest statute denies equal protection of the laws because of three arbitrary distinctions: (1) between gratuitous guests and paying passengers; (2) between automobile guests and other social guests; and (3) between different subclasses of automobile guests. The court declares that none of these classifications bears any rational relation to the purposes of the statute. It also holds that the statute is impermissibly broad in barring the recovery of honest as well as collusive guests. We shall consider each of these grounds separately.

### b. *Grounds of constitutional attack*

#### (1) *Guests and passengers*

The California court characterizes the distinction between gratuitous guests and paying passengers as irrational in the light of its earlier decision in Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P. 2d 561 (1968), which abolished the long-standing common-law distinctions between the duties owed to business invitees, licensees and social guests, and imposed on landowners the duty to use reasonable care for the safety of all persons whose presence on the land might be anticipated. These distinctions are still recognized in Texas. In Buchholz v. Steitz, 463 S.W.2d 451 (Tex.Civ.App., Dallas, 1971, writ ref'd

---

4. See statutes listed in 2 F. Harper & F. James, The Law of Torts § 16.15, 4 (1956).

5. Among these decisions the following are cited by the Supreme Court of Texas in *Campbell*, *supra*: Roberson v. Roberson, 193 Ark. 669, 101 S.W.2d 961 (1937); Naudzius v. Lahr, 253 Mich. 216, 234 N.W. 581, 74 A.L.R. 1189 (1931); Shea v. Olson, 186 Wash. 700, 59 P.2d 1183, 111 A.L.R. 998 (1936). Others include: Harlow v. Ryland, 172 F.2d 784 (8

Cir. 1949) (Arkansas statute); Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939); Patton v. La Bree, 60 Cal.2d 606, 35 Cal.Rptr. 622, 387 P.2d 398 (1963); McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867 (1942); Miller v. Huizinga, 23 Mich.App. 363, 178 N.W.2d 542 (1970); Romero v. Tilton, 78 N.M. 696, 437 P.2d 157 (Cr.App.1968); Smith v. Williams, 51 Ohio App. 464, 1 N.E.2d 643 (1935). *Contra*, Brown v. Merlo, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973).

n. r. e.), we considered the duty owed to a social guest in a home, expressly declined to follow *Rowland,* and followed Texas decisions treating such a guest as a licensee. Our supreme court has not written directly on the degree of care owed to a social guest, but it has consistently maintained the distinction between the duties owed to licensees and to business invitees. Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.1963); Texas Cities Gas Co. v. Dickens, 140 Tex. 433, 168 S.W.2d 208 (1943); Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073 (1941).

Moreover, in Massachusetts [6] and several other jurisdictions,[7] liability to a gratuitous guest for ordinary negligence has been denied as a matter of common law on the theory that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove when the defendant is paid for doing the same thing, although most courts that have considered the question in the absence of statute have held that the owner of an automobile owes a guest a duty of ordinary care so far as operation of the vehicle is concerned.[8]

Since the distinction between the duties owed to social guests and business invitees is thus recognized in other contexts, our question is whether it is irrational when considered in relation to the purpose of the guest statute. The party attacking the statute has the burden to show that it is irrational because legislation is presumed to be valid. McDonald v. Board of Election Comm'rs, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Dodgen v. Depuglio, 146 Tex. 538, 209 S.W.2d 588 (1948). We conclude that plaintiff has not carried that burden in this case. The purpose of article 6701b is indicated in the emergency clause, which recites that under previous law "fraud may be perpetrated upon insurers of owners and operators of motor vehicles." Tex.Laws 1931, ch. 225, § 3, at 379. It would be difficult, if not impossible, to demonstrate that insured owners and operators are not more likely to collude with gratuitous guests than with paying passengers, or, at least, more inclined to allow their testimony about responsibility for an accident to be colored by sympathy for guests who have accepted their hospitality. Any conclusion of this court that the distinction between guests and paying passengers bears no rational relation to prevention of fraud on insurers would involve an appraisal of human motivations and reactions which judges are no better qualified to make than legislators. We cannot say that the legislature's determination of those matters has no rational basis.

### (2) *Automobile guests and other social guests*

The second classification which the *Brown* opinion characterizes as irrational is that distinguishing between guests in automobiles and other social guests. This distinction is the identical ground presented to the Supreme Court of the United States in Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Mr. Justice Stone, writing for a unanimous Court, ob-

6. Massaletti v. Fitzroy, 228 Mass. 487, 118 N.E. 168 (1917); Falden v. Crook, 342 Mass. 173, 172 N.E.2d 686 (1961).

7. Caskey v. Underwood, 89 Ga.App. 418, 79 S.E.2d 558 (1953); Lippman v. Ostrum, 22 N.J. 14, 123 A.2d 230 (1956) (guest who solicited ride must establish gross negligence); Perozzi v. Ganiere, 149 Or. 330, 40 P.2d 1009 (1935) (guest statute upheld with comment that it "merely placed in statutory form what some courts and the public generally have recognized as just and salutary rules concerning the liability of a host toward an invited

passenger in his automobile); Connolly v. Derby, 167 Wash. 267, 9 P.2d 93 (1932); O'Shea v. Lavoy, 175 Wis. 456, 185 N.W. 525 (1921).

The New Jersey and Wisconsin decisions cited have been overruled in Cohen v. Kaminetzky, 36 N.J. 276, 176 A.2d 483 (1961), and McConville v. State Farm Mutual Automobile Ins. Co., 15 Wis.2d 374, 113 N.W.2d 14 (1962).

8. 2 F. Harper & F. James, The Law of Torts § 16.15 (1956).

served that whether there had been a serious increase in the evils of vexatious litigation in automobile guest cases was for the legislature to determine, and that the wisdom of legislation restricting liability in such cases was not the concern of courts. In response to the argument that no grounds existed for a distinction between gratuitous passengers in automobiles and those in other classes of vehicles, the Court said:

> In this day of almost universal highway transportation by motorcar, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the Legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit. [Citations] It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs.

We accept this decision as authoritative on the application of the federal equal protection clause to this particular type of statute. We see *no reason to extend the* strictures of the Fourteenth Amendment beyond the interpretation of the highest authority. No contention is made that the "equal rights" *provision of our state Bill* of Rights, Tex.Const. art. I, § 3 (Vernon 1955), establishes a different and more exacting standard for the Texas Legislature.

We do not agree with the suggestion in *Brown* that the *Silver* principle is no longer valid because the Connecticut statute reviewed in that case was "not set against the background of almost universal liability insurance." The California court asserts that a guest is not considered "ungrateful" if he sues his host's insurer.[9] Discouragement of ingratitude does not seem to be the primary purpose of the Texas statute. As we have noted above, fraud on liability insurers is the evil which our legislature expressly recited as the basis for giving article 6701b immediate effect. If automobile liability insurance is now more nearly universal than it was when *Silver* was decided, the potentiality for collusion between owners and guests is even greater than it was then.

### (3) *Subclasses of automobile guests*

The third classification which the California court in *Brown* characterizes as irrational with respect to the purpose of the guest statute is that between different sub-classes of automobile guests. *Brown* points out that under the California statute a gratuitous guest may recover for ordinary negligence if he is injured while the vehicle is traveling over private land rather than on a public highway and also if he is temporarily outside the vehicle. The Texas statute has been similarly construed.[10] One of the principal grounds given in *Brown* for not following *Silver* is that in *Silver* the Supreme Court did not consider the reasonableness of the statutory distinction between the different categories of automobile guests.[11] We do not read *Silver* so narrowly. To us it stands for the principle that if a statute strikes at an evil where it is most conspicuous and reaches the class of cases where abuses are most frequent, it does not run afoul of the equal protection clause by failing to in-

---

9. The California court states one of the purposes of the guest statute to be "encouragement of hospitality." The basic idea is more often stated as a principle of natural justice that one who engages in a gratuitous undertaking should not be liable to the beneficiary in the absence of morally reprehensible conduct. Silver v. Silver, 108 Conn. 371, 143 A. 240 (1928), aff'd 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929); Perozzi v. Ganiere, 149 Or. 330, 40 P.2d 1009 (1935); Keeton, Annual Survey of Texas Law, Torts, 24 S.W. L.J. 3, at 19 (1970). See also the common-law decisions cited *supra*, notes 6 and 7.

10. Hull v. Chapman, 464 S.W.2d 705 (Tex. Civ.App., Tyler, 1971, no writ); Stanford v. Stanford, 413 S.W.2d 835 (Tex.Civ.App., Dallas, 1967, writ ref'd n. r. e.).

11. 106 Cal.Rptr. 388 at 393, 506 P.2d 212 at 217, n. 4.

clude all classes of cases in which the same abuses may occur. The most conspicuous and frequent type of automobile guest case is that covered by the statute, in which a gratuitous guest of the owner or operator is injured while being transported over the public highway. Under the principle stated in *Silver,* the existence of relatively minor classes of cases in which automobile guests may be permitted to recover for ordinary negligence does not require frustration of the legislative purpose.

*Silver* is in harmony with other decisions holding that the equal protection clause does not require perfection in classifying the subjects of legislation. The classic statement of this concept was made by Mr. Justice Holmes in an opinion overruling an equal protection attack on a Texas statute which imposed a penalty solely on railroad companies for permitting Johnson grass to go to seed on their lands:

> Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.[12]

More recent decisions agree that an under-inclusive classification is not necessarily a fatal defect unless the legislation involves a "suspect classification," such as race or poverty, or a "fundamental interest," such as voting rights or freedom of speech. Only in these limited areas is a legislative classification subject to "strict scrutiny," which casts on the party seeking to uphold the statute the burden to establish a "compelling state interest."[13] No contention that the guest statute involves a "suspect classification" or a "fundamental interest" in the constitutional sense[14] has been presented here. Such a contention was rejected by the California court in *Brown.*[15] That court, however, applied the "rational relation" test more strictly than the Supreme Court had done in the cases above cited,[16] and in doing so relied on later Supreme Court opinion involving women[17] and illegitimates,[18] which were treated as equivalent to "suspect classification."[19] Four members of the Court have now declared sex a "suspect classification" on the ground that it is "an immutable characteristic determined solely by the accident of birth."[20] The same consideration would apply to illegitimacy. Thus, as subjects of legislative classification, women and illegitimates differ materially from such an indefinite class as that of automobile guests, into which individuals typically enter voluntarily and remain

12. Missouri, K. & T. Ry. v. May, 194 U.S. 267, 24 S.Ct. 638, 48 L.Ed. 971 (1904).

13. McDonald v. Board of Election Comm'rs, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). *See* Tussman & tenBroek, The Equal Protection of the Laws, 37 Cal.L.Rev. 341, 348 (1949); Developments—Equal Protection, 82 Harv.L.Rev. 1067, at 1084 (1969).

14. The limits of "strict scrutiny" are indicated by the Supreme Court of the United States in the recent school tax case, San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Comparison of this decision with the California decision in Serrano v. Priest, 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971) shows that the Supreme Court allows state legislatures a broader range of discretion under the equal protection clause than does the California court.

15. 106 Cal.Rptr. 388 at 392, 506 P.2d 212 at 216, n. 2.

16. See cases cited *supra,* notes 12, 13.

17. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

18. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Glona v. American Guarantee & Liability Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

19. *See* Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1, at 26–33 (1972).

20. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (three concurring Justices disagree on this point; one concurs in result; one dissents).

for relatively brief periods of time. The guest statute does not discriminate invidiously against any permanent, identifiable group of persons, but applies equally to all persons when they are guests in automobiles. Although this type of classification may violate the equal protection clause if patently irrational, we conclude that it is within the broadest range of legislative discretion permitted by the equal protection clause and that within this range, as announced in *Silver,* legislation need not extend to all cases in which abuses may occur if it strikes at an evil where it is most conspicuous and reaches the class of cases where abuses are most frequent.

### (4) *Honest and collusive guest suits*

Finally, we cannot accept the California court's condemnation of the guest statute as an "impermissibly over-inclusive classification scheme." That court reasons that in broadly prohibiting all automobile guests from instituting actions for negligence because a "small segment" of that class may file collusive suits, the statute "imposes a burden upon a wider range of individuals than are included in the class of those tainted with the mischief at which the law aims." The court goes on to say that instead of confining the disability to those who actually institute collusive suits, the statute reaches out beyond such persons and burdens the great number of honest automobile guests.[21] The effect of the decision seems to be that legislation denying recovery for ordinary negligence must be limited to guest claims shown to be actually collusive. No allowance is made for the difficulty of detecting collusion between an insured owner or operator and his guest or for the even greater difficulty of establishing it to the satisfaction of a jury. Of course, legislation limited to litigation in which collusion can be proved would be superfluous because such proof in itself would be sufficient in most cases to defeat an action based on ordinary negligence. The purpose of the statute is to prevent collusion that is not so easily exposed. Since no method is available to identify collusive guest suits, the legislature cannot possibly draw a statute so narrowly and precisely as to apply only to cases of actual collusion.

In order to deal with the problem at all, the legislature must weigh the advantage of barring fraudulent guest claims against the disadvantage of also barring honest guest claims. This balancing of intangibles is a proper legislative function. An analogous problem is dealt with in the Statute of Frauds,[22] which assumes that the advantage of barring fraudulent claims on certain classes of oral contracts outweighs the disadvantage of barring honest claims on such contracts. We express no opinion on how the balance should be struck for automobile guest claims, since weighing the advantages and disadvantages of legislation is not a matter for the courts. Roschen v. Ward, 279 U.S. 337, 49 S.Ct. 336, 73 L.Ed. 722 (1929); Westover v. Schaffer, 205 Kan. 62, 468 P.2d 251 (1970). We would be asserting legislative powers if we should assume, without supporting factual data, that guests disposed to collude constitute only a "small segment" of the class covered by the statute. The presumption in favor of the validity of legislation requires us to construe the "fraud" which the legislature sought to prevent as including more subtle forms of cooperation between guests and insured hosts than outright conspiracy to commit perjury, but, under any interpretation of the legislative purpose, we have no reliable information concerning the extent of the evil which prompted enactment of the statute. Consequently, we cannot hold that the legislature had no rational basis for barring all automobile guest claims based on ordinary negligence of the owner or operator.

---

21. 106 Cal.Rptr. 388 at 403, 506 P.2d 212 at 227.

22. Tex.Bus. & Comm.Code Ann. § 26.01 (V.T.C.A.1968).

c. *Conclusion*

■■ Application of the rationality test to legislative classifications involves the general problem of defining the relative limits of legislative and judicial power. Proper definition of those limits requires judicial self-restraint. The equal protection clause of the Fourteenth Amendment and the "equal rights" clause of the Texas Constitution do not authorize courts to encroach on the legislature's area by exalting their own views of the wisdom of legislation to the rank of constitutional principles or by imposing standards so rigorous as to leave no tolerance for the imperfections inherent in political processes. Courts should accept legislative classifications as valid unless invidious discrimination is clearly demonstrated. We conclude that plaintiff has failed to demonstrate that the classification of automobile guests in article 6701b is either so arbitrarily under-inclusive or so arbitrarily over-inclusive as to constitute invidious discrimination.

Affirmed.